## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 13-CV-62399-PCH

MARIE LUCIEN,

              Plaintiff,

vs.

FEDERAL     NATIONAL     MORTGAGE
ASSOCIATION   AND   GREEN   TREE
SERVICING, LLC,

              Defendants.

_____/

### RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Local Rule 7.1, Plaintiff, MARIE LUCIEN, ["Plaintiff"] hereby responds to Defendants', FEDERAL NATIONAL MORTGAGE ASSOCIATION ["FANNIE MAE"] and GREEN TREE SERVICING, LLC ["GREEN TREE"], Motion to Dismiss under Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully requests this Honorable Court enter an Order denying the relief sought by Defendants. In support of her Motion, Plaintiff submits the incorporated memorandum of law.

### I. INTRODUCTION AND BACKGROUND

The action is this Court arose on Defendants' failure to comply with the Truth In Lending Act, 15 U.S.C. §1601 et seq. ["TILA"]. Specifically, Plaintiff seeks the remedies as provided in TILA for Defendants' failure to timely provide an accurate payoff statement as required by 12 C.F.R. § 226.36(c)(1)(iii). In her three-count Complaint[1], Plaintiff alleges that GREEN TREE was the servicer of the subject loan, and that "On or about November 13, 2012, GREEN TREE received a written request ("Plaintiff's request"), sent on behalf of Plaintiff, for information

_____

[1] Plaintiff has since withdrawn Count ii of her Complaint [D.E. 16].

pursuant to TILA and Regulation Z." [D.E. 1, Compl. ¶ 16] Although obligated to do so in accordance with Federal statutes, "GREEN TREE has failed to provide an accurate payoff statement within a reasonable time after receiving a request, contrary to 12 C.F.R. §226.36(c)(1)(iii)." [D.E. 1, Compl. ¶ 28].

In its Motion to Dismiss [D.E. 10], Defendants make multiple arguments. Prior to making any substantive arguments, Defendants accuse Plaintiff's counsel, Loan Lawyers, LLC, of harvesting law suits for the purpose of obtaining statutory damages and attorney's fees and to gain leverage in foreclosure proceedings.

Substantively, Defendants make the following arguments. First, Defendants argue that FANNIE MAE, as an assignee, is only liable for violations that are apparent on the face of disclosures that are provided in connection with the origination of the loan. Second, Defendants argue that TILA does not impose vicarious liability on creditors for acts or omissions of a servicer. Third, Defendants argue that servicers are exempt from liability under TILA unless they are a current owner or previous owner of the mortgage loan at issue. Fourth, Defendants argue that the information provided to Plaintiff fully complies with TILA. Fifth, Defendants argue that TILA's failure to supply a vicarious liability standard makes it unconstitutionally vague. Finally, Defendants argue that there is no express or implied private cause of action for consumers to pursue an action for vicarious liability against an assignee for the failure of a servicer to comply with TILA or affirmative relief under 15 U.S.C. 1641(f)(2) and 12 C.F.R. 226.36(c)(1)(iii).

## II. MEMORANDUM OF LAW

In considering a 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). Additionally, a court must view the complaint in the light most favorable to the plaintiff, and it

must generally accept the plaintiff's well-pleaded facts as true.  Hishon v. King v. Spalding, 467 U.S. 69 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007).

Once a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, the court must next determine whether the well-pled facts state a claim to relief that is plausible on its face.'" Twombly, 550 U.S. at 570.  Plaintiff has "well-pled" the facts that gave rise to his Complaint down to the exact dates HSBC unlawfully failed to comply with TILA. The facts supporting each element of the cause of action are pled. Thus, Plaintiff has stated a valid cause of action.

### A. Defendants' Violations Were "Apparent on the Face" of the Disclosure Statements

As a threshold matter, "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent."  Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998).

Defendants argue that FANNIE MAE is only responsible for violations that apparent on the face of disclosure documents in existence at the time of assignment. [D.E. 10 at 6]. Defendants cite to Signori v. Fed. Nat. Mortg. Ass'n, 934 F. Supp. 2d 1364, 1367 (S.D. Fla. 2013) for support. In Signori, Judge Scola dismissed the case but limited its ruling to whether "[a]n assignee may only be held liable for violations that are apparent on the face of disclosure documents that exist at the time of the assignment." Id. at 1367. The court found that because the subject disclosure violations occurred after the origination of the loan, Fannie Mae − as assignee − could not be held liable. The court found that "the TILA provisions are clear that the disclosure documents referred to in Sections 1641(a) and 1641(e)(1) are documents generated in connection with the origination of the loan. Consequently, documents generated after an assignment has occurred cannot form the basis of an assignee's liability under Section 1641". [Id.]. Plaintiff respectfully requests this Court not adopt the ruling in Signori and submits that 15 U.S.C.

1641(g) confirms that assignee liability is not limited to disclosures in connection with the origination of the loan.

15 U.S.C. 1641(g) governs disclosures that must be made by new assignees. If assignee liability is limited only to disclosures in connection with the origination of the loan, there could never be liability for a violation of §1641(g) because by definition, it requires disclosures that cannot be initial disclosures. Yet, liability for §1641(g) was specifically and deliberately inserted in § 1640(a) – TILA's civil liability section. If the Court limits disclosure violations solely to initial disclosures, Congress' deliberate insertion will be rendered meaningless. It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect". United States v. Nordic Village Inc., 503 U.S. 30, 36 (U.S. 1992).

Section 1641(g) provides as follows:

(g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--
(A) the identity, address, telephone number of the new creditor;
(B) the date of transfer;
(C) how to reach an agent or party having authority to act on behalf of the new creditor;
(D) the location of the place where transfer of ownership of the debt is recorded; and
 (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g)

Under §1641(g), an assignee's duty only arises after it takes assignment of the loan which can only occur after origination. Thus, an assignee's disclosure violation must be for disclosures

that occurred post-origination. The same rationale applies to §1639(l)(2). Moreover, this is not inconsistent with the language of 15 U.S.C. § 1641(a) or 15 U.S.C. § 1641(e)(1). §1641(e) states that an action against an assignee may be maintained only if (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary. 15 U.S.C. 1641(e). 15 U.S.C. 1641(e)(2)(B) states that a violation can be apparent on the face of the disclosure "if the disclosure statement does not use the terms or format required to be used by this subchapter." 15 U.S.C. 1641(e)(2)(B).

The text of the statute does not limit liability to disclosures in connection with loan origination in any way. *See* Rinegard-Guirma v. Bank of Am. NA, 2012 WL 1110071 (D. Or. Apr. 2, 2012); Runkle v. Fed. Nat. Mortg. Ass'n, 905 F. Supp. 2d 1326 (S.D. Fla. 2012); Cenat v. U.S. Bank, N.A., 2013 WL 1136585 (S.D. Fla. 2013); Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 (N.D. Cal. 2010).

Further, at least two other courts in the Southern District of Florida have addressed this exact issue. St. Breux v. U.S. Bank, Nat. Ass'n, 919 F.Supp.2d 1371 (S.D. Fla. 2013) and Cenat v. U.S. Bank, N.A., 930 F.Supp.2d 1347 (S.D. Fla. 2013). In Cenat, Judge Kenneth Marra adopted and incorporated Judge William P. Dimitrouleas's following reasoning in St. Breux. Cenat, at 1353:

> First, TILA provides that assignees are liable just like creditors, so long as the TILA violation is "apparent on the face of the disclosure statement." § 1641(a). Setting aside the "apparent on the face" language for a moment, subsection (a) makes it apparent that assignees can be liable like creditors. Such a result makes sense. The only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation, whereas an assignee only receives the ownership of the loan without having originated the loan. See 15 U.S.C. §§ 1602(g), 1641(a). The type of conduct that violates TILA's informational request provisions like asking for a payoff statement, however, only arises post-origination. The distinction between originator and assignee therefore is irrelevant.

From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers. In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment. Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms. Because the relationship is the same, liability principles should be the same.

Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, see *Khan v. Bank of New York Mellon*, 849 F.Supp.2d 1377, 1382 (S.D.Fla.2012), it similarly makes no sense to absolve the assignee of all liability. Once the assignee receives the assignment, the assignor is most likely out of the picture. If an assignee were not responsible for its servicer's conduct, no party could be liable. Id. There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

The wrinkle, which was set aside for a moment, is that for an assignee to be liable, the TILA violation must be "apparent on the face of the disclosure statement." § 1641(a). It is apparent from the face of Seterus' response that no payoff statement was attached. Fannie Mae argues that § 1641(a) means that an assignee can only be liable for documents created at the time of the origination of the loan (Fannie Mae's interpretation of "disclosure statements"), which documents were assigned to the assignee. If so, then an assignee would not be liable for a post-assignment TILA error. The Court must resolve whether § 1641(a) prohibits a plaintiff from placing liability on an assignee after the assignment has been completed, such as when an assignee's servicer violates TILA.

The Court does not believe that assignees are only liable for lending errors arising prior to the assignment. Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from sister district courts.

In *Rinegard–Guirma v. Bank of America NA*, 10–cv–01065, 2012 WL 1110071, at *9 (D. Or. Apr. 2, 2012), the assignee argued that § 1641(a) limited its liability for botched post-assignment informational requests. The court acknowledged that "a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement, since a servicer's role only begins after disclosures are made." Id. at *9. The court found, however, that an interpretation of TILA that did not hold assignees liable would "conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations." Id. at *10. Citing Khan, the

court noted that assignees obviously can be liable for failing to disclose information, pointing to the rule that servicers who are also assignees may be held liable for violations of § 1641(f)(2). *Id.*

* * *

To this reasoning, the Court would merely reemphasize that "disclosure statement" is not defined in § 1641(a) and that term can be construed to encompass postassignment disclosures. The Court acknowledges that many of the instances in TILA where disclosures are mentioned address situations at the inception of the creditor-debtor relationship. E.g. 15 U.S.C. § 1604 (discussing model disclosure forms for mortgage loan transactions). But not all references to disclosures occur in the pre-assignment context. When Congress amended TILA in 2009, it added § 1641(g). See Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658. That section states, "In addition to other disclosures required by this title," whenever a mortgage loan is sold, transferred, or assigned, "the creditor that is the new owner or assignee " must provide the obligor with contact information. 15 U.S.C. § 1641(g) (emphasis added). Congress then created a private right of action for violating this new subsection, as well as for violating 1641(f)(2). See id.

As the 2009 amendments demonstrate, Congress considered postassignment informational disclosures to be disclosures within the purview of TILA. By the plain terms of § 1641(g), assignees who fail to make that informational disclosure can be liable. There is no limitation of the term "disclosure statement" to mean only those disclosures made initially between the borrower and original creditor. The new § 1641(g) emphatically creates liability purely for the assignee's own disclosures or lack thereof. At the very least, the 2009 amendments broadened the meaning of "disclosure statement" to include disclosures made by the assignee post-assignment. The Court concludes that when an assignee's servicer fails to make a disclosure under § 1641(f)(2), then the error is apparent from the face of that particular disclosure statement and an assignee may be liable.

St. Breux v. U.S. Bank, Nat. Ass'n, 919 F.Supp.2d 1371, 1377 (S.D. Fla. 2013)

Moreover, "[t]he only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation, whereas an assignee only receives the ownership of the loan without having originated the loan. See 15 U.S.C. §§ 1602(g), 1641(a). The type of conduct that violates TILA's informational request provisions like asking for a payoff statement, however, only arise post-origination. The distinction between originator and

assignee therefore is irrelevant." <u>Runkle v. Fed. Nat. Mortg. Ass'n</u>, 905 F. Supp. 2d 1326, 1332 (S.D. Fla. 2012) order vacated in part on reconsideration, 2012 WL 6554755 (S.D. Fla. 2012).

> From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers. In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment. Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms. Because the relationship is the same, liability principles should be the same. Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, see Khan, 849 F.Supp.2d at 1382, it similarly makes no sense to absolve the assignee of all liability. Once the assignee receives the assignment, the assignor is most likely out of the picture. If an assignee were not responsible for its servicer's conduct, no party could be liable. Id. There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

<u>Runkle v. Fed. Nat. Mortg. Ass'n</u>, 905 F. Supp. 2d 1326, 1332 (S.D. Fla. 2012)

The very purpose of §1641(f)(2) is specifically limited to a post origination time period. Applying <u>Signori</u>, §1641(f)(2) would only be applicable to servicers who were also the original lenders. This scenario is so infrequent—it could not have been the intent of Congress, and certainly would not have warranted specifically adding it to the civil liability portion of the statute. And—as stated *supra*—there remain serious questions as to the applicability of §1641(g)[2].

The Sixth Circuit Court of Appeals very recently noted the <u>Cenat</u> rationale in a footnote in <u>Marais v. Chase Home Fin. LLC</u>, 2013 WL 6170977 (6th Cir. November 26, 2013). If this Courts adopts the ruling in <u>Signori</u>, "then an assignee would not be liable for a post-assignment TILA error". <u>Runkle</u>, at 1332. "Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from

---

[2] A point not even addressed by Defendant.

sister district courts". Id. (citing Rinegard-Guirma v. Bank of Am. NA, 2012 WL 1110071 (D. Or. Apr. 2, 2012)). In light of the above, Plaintiff respectfully requests this Court to find that vicarious liability applies to assignees.

### B.  FANNIE MAE is Vicariously Liable for GREEN TREE's Violation of TILA

As a threshold matter, "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent". Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998). See also  Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer."); Fairley v. Turan-Foley Imps., Inc., 65 F.3d 475, 482 (5th Cir. 1995) ("The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers. . . ."). Even technical or minor violations of the TILA impose liability. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).

Defendants urge the Court to adopt the holding in Kievman v. Federal Nat. Mortg. Ass'n, 901 F. Supp. 2d 1348 (S.D. Fla. Sep. 14, 2012). [D.E. 10 at 6]. To date, various courts in the Southern District of Florida have grappled with this issue and many have ruled that vicarious liability is applicable to TILA. Khan v. Bank of New York Mellon, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012); Galeano v. Fed. Home Loan Mortg. Corp., 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012); Kissinger v. Wells Fargo Bank, N.A., et. al., 2012 WL 3759034 (S.D. Fla. August 30, 2012); Santos v. Federal National Mort. Assc., 2012 WL 3860559 (S.D. Fla. Sept. 6, 2012); Montano v. Wells Fargo Bank N.A., 2012 WL 5233653 (S.D. Fla. Oct. 23, 2012)[3].  But see Holcomb v. Federal Home Loan Mortgage Corporation, 2011 WL 5080324 (S.D. Fla.  Oct. 26, 2011); Kievman v. Fed. Nat. Mortg. Ass'n, 901 F. Supp. 2d 1348 (S.D. Fla. Sept. 14, 2012).

---

[3] Defendants do not address these cases.

### This Honorable Court Should Not Adopt <u>Kievman</u>

At the outset, Plaintiff acknowledges this point of law is a novel one and this Court will have little guidance from its sister courts. Only a handful of courts throughout the country have actually addressed the issue of agency liability as it applies to 15 U.S.C. 1641(f)(2) to date. Besides the above-mentioned opinions, <u>Rinegard-Guirma v. Bank of Am. NA</u>, 2012 WL 1110071 (D. Or. Apr. 2, 2012) also disagreed with <u>Holcomb</u> and <u>Kievman</u> and applied vicarious liability under very similar circumstances.

The <u>Holcomb</u> and <u>Kievman</u> courts held, *inter alia,* that agency principals should not be applied to TILA.  *Id.* at *7.   The <u>Kievman</u> court relied on <u>Holcomb</u> in reaching its decision. In <u>Holcomb</u>, the plaintiff served its request for information under 1641(f)(2) on Wells Fargo Bank, N.A. ["Wells Fargo"]- the loan servicer- who failed to respond.  <u>Id</u>. at *1.  Holcomb then sued Federal Home Loan Mortgage Corporation ["Freddie Mac"] as the creditor of the loan, arguing that Freddie Mac was liable for Wells Fargo's failure as its agent. <u>Id</u>. at *5.  The court found that Freddie Mac could not be held vicariously liable for Well Fargo's failure.  <u>Id</u>*. at *7.*  Plaintiffs urge this Honorable Court not to follow the holding in <u>Holcomb</u>, and instead to follow the majority of courts that have ruled on this issue[4].

It is clear that Congress wants borrowers to able to obtain information about the ownership of their loans. Furthermore, as a matter of statutory interpretation, TILA should be construed "so as to avoid rendering superfluous any statutory language." <u>Astoria Federal Savings</u>

---

[4] Plaintiffs also respectfully note that the applicable section of <u>Holcomb</u> is fairly bereft of legal analysis, whereas the opinions applying vicarious liability are far more thorough in their analyses, and will be discussed below. *See* <u>Davis v. Greenpoint Mortg. Funding, Inc.</u>, 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011); <u>Khan v. Bank of New York Mellon</u>, 12-civ-60128-WPD, 2012 WL 1003509 (S.D. Fla. Mar. 19, 2012); <u>Rinegard-Guirma v. Bank of Am. NA</u>, 3:10-CV-0106S-PK, 2012 WL 1110071 (D. Or. Apr. 2, 2012); <u>Roach v. Option One Mortgage Corp.</u>, 598 F.Supp.2d 741, 753 (E.D.Va.2009); <u>In re Bumpers</u>, 2003 U.S. Dist. LEXIS 26255 (N.D.Ill. Sept. 11, 2003); <u>Consumer Solutions REO, LLC v. Hillery</u>, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010); <u>Johnson v. Multi-Solutions, Inc.</u>, 2011 WL 3667554 at *3. (D.N.J. Aug. 22, 2011).

& Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991). As part of that interpretation, this Court must look at TILA as a whole. The Supreme Court held long ago that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." United States v. Boisdore's Heirs, 49 U.S. 113, 122 (1850).

TILA is, in simple terms, a consumer protection statute. Congress provided that servicers, upon request of the borrower, must identify the owner or master servicer of the borrower's loan. 15 U.S.C. 1641(f)(2). Here, if this Court were to adopt the rationale in Holcomb, Plaintiff has no adequate remedy at law for Chase's failure to comply with 12 C.F.R. § 226.36(c)(1)(iii) and 15 U.S.C. §1641(l)(2), rendering the language in that section meaningless. Moreover, to further it remedial purpose, the Court is to liberally construe TILA's language in favor of the consumer. See Rodash v. AIB Mortgage, 16 F.3d 1142, 1444 (11th Cr.1994).

In May 2009, TILA was amended to add to Section 1640(a), a private right of action against creditors for a violation of Section 1641(f)(2). See Pub. L. No. 111-22, § 404(b), 123 Stat. 1632, 1658 (2009); 15 U.S.C. § 1640(a) ("Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under... subsection (f) or (g) of section 1641 of this title,... with respect to any person is liable to such person....").

Adding a private cause of action was, "in part, a reaction to the continuing concern that, lacking a private right of action, Section 1641(f)(2) had failed to protect homeowners from harms associated with nondisclosures." Davis v. Greenpoint Mortg. Funding, Inc., 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011) report and recommendation adopted in part, rejected in part on other grounds, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011) (citing 155 Cong. Rec. S5173–74 (daily ed. May 6, 2009).) "Furthermore, the amendment responded to concerns

voiced by various consumer protection agencies and illustrated by a 2007 TILA case that highlighted the disastrous effects that a failure to disclose pursuant to a Section 1641(f)(2) request can have upon a consumer's ability to exercise her rights." Id. *See also* 155 Cong. Rec. S5173–74 (daily ed. May 6, 2009); *see* In re Meyer, 379 B.R. 529, 553–554 (Bkrtcy.E.D.Pa. Nov.29, 2007) (describing situation where consumers attempted to exercise rescission rights pursuant to TILA, servicer refused to reveal identity of note holder, and statute of limitations for the cause of action expired).

In proposing the amendments to TILA aimed at helping borrowers identify the owner of their mortgage obligations, Senator Barbara Boxer stated:

> "Federal law does require that the servicer tell the homeowner the identity of the person holding their mortgage. ...While servicers are required to disclose this information, there are no penalties in the law for noncompliance and no remedies for a homeowner faced with a recalcitrant servicer."

*See*, 155 Cong. Rec. S5098 (May 5, 2009). "Thus, it is apparent that Congress intended to hold creditors liable for violations of Section 1641(f)(2)." Davis, at *3.

Analyzing Holcomb and the other opinions on point, Judge Dimitrouleas disagreed with Judge Hurley and was persuaded "that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors." Khan, at *5. The Khan court then rejected defendant's position that it cannot be vicariously liable for damages under § 1641(a) as a result of its servicers alleged failure to properly respond to plaintiff's §1641(f)(2) request for information, and denied the motion to dismiss. Id.

The Honorable James I. Cohn of the Southern District of Florida found Khan's reasoning persuasive in Galeano v. Fed. Home Loan Mortg. Corp.,, 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012)(The undersigned, like Judge Dimitrouleas, "is persuaded that Congress meant to extend

agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors.")

Judge Marra agreed with the overwhelming majority of courts that have analyzed this issue. Kissinger, at 10. "This Court chooses to follow the reasoning of the courts finding vicarious liability. There is no question that Congress created a cause of action as set forth in 15 U.S.C. § 1640(a). At the same time, Congress mandated that servicers would not be liable for a TILA violation. 15 U.S.C. § 1641(f). As such, the Court concludes that Congress intended the servicer's agent to be liable; otherwise, Congress created a cause of action with no one to sue for relief." Id. Judge Ryskamp followed suit in Montano.

As the Holcomb court noted, the court in Hillery, was faced with a similar dilemma. Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010). In Hillery, the court addressed the main rationalization the Holcomb put forth; namely, that 15 U.S.C. 1641(g)[5] was the vehicle in which congress intended to impose liability on the creditor. Id. at *4. The court was not persuaded, finding:

> If § 1641(g)(1) simply required a creditor to provide the above information *upon a request by the obligor,* as in § 1641(f)(2), this would be strong evidence that Congress enacted §1641(g)(1) to effectuate a change to § 1641(f)(2)-by expanding liability from the servicer to the creditors. This would imply that prior to 2009, liability was limited to the servicer. But §1641(g)(1) does not merely require action from a creditor only upon a request by the obligor. Rather, §1641(g)(1) puts an affirmative obligation on the creditor to act, regardless of the obligor's conduct. By doing so, it does far more than arguably expand the list of parties who may be liable under §1641(f)(2); it changes the substantive obligations of creditors. Therefore, contrary to what [plaintiff] argues, §1641(g)(1)'s enactment does not implicitly presume that a creditor is not liable under §1641(f)(2) for its servicer's failure to respond to a borrower's request for information."

---

[5] "In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including [*inter alia* ] the identity, address, telephone number of the new creditor ....15 U.S.C. § 1641(g)(1).

Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 at *4.

The Hillery court acknowledged the limited case law on the issue, but noted, "what little case law there is indicates that liability based on an agency relationship is generally cognizable under TILA." *Id.* (citing Roach v. Option One Mortgage Corp., 598 F.Supp.2d 741, 753 (E.D.Va.2009); In re Bumpers, 2003 U.S. Dist. LEXIS 26255 (N.D.Ill. Sept. 11, 2003). The court "consider[ed] the importance of providing borrowers with information about the current lender under § 1641(f)(2) in the increasingly prevalent context of, *e.g.,* securitized loans where the identity of the lender may be difficult to ascertain. Absent an indication of Congressional intent to the contrary, the Court holds that agency principles apply to §1641(f)(2)." Hillery, at *4.

Analogously in Davis, the court applied agency principles to §1641(f)(2) after a thorough analysis. Davis v. Greenpoint Mortg. Funding, Inc., 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011).

> To reconcile the substantive obligation imposed upon servicers in Section 1641(f)(2) and the remedial obligation levied upon creditors in Section 1640(a), this Court reads TILA to allow the application of agency principles so that creditors may be held vicariously liable for the acts of servicers as Plaintiff urges. By its plain language, 15 U.S.C. § 1641(f)(2) imposes a disclosure obligation that is directed to servicers only. Thus, it is a servicer's failure to act that gives rise to the private right of action that is authorized in 15 U.S.C. § 1640(a). *See* 15 U.S.C. § 1641(f)(2); 15 U.S.C. § 1640(a). TILA, however, does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of Section 1641(f)(2). Section 1641(f)(2) does not provide for a servicer's liability for damages if it fails to comply with the section's obligations, 15 U.S.C. § 1641(f) (2), and the only provisions within Section 1641 concerning servicer liability limits a servicer's liability to situations in which the servicer was once an assignee or owner of the loan. 15 U.S.C. § 1641(f)(1). […] Because TILA does not impose liability upon a servicer who is not an owner or assignee of a note, the private right of action that Section 1640(a) creates would be meaningless, unless agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer. To avoid rendering Section 1640(a) superfluous, this Court concludes that agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers. […] This conclusion gives force to the disclosure provision in Section 1641(f)(2) and

> comports with the intent of TILA to be "remedial in nature ... and ... [to] be construed liberally in order to best serve Congress's intent ." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998).

Davis v. Greenpoint Mortg. Funding, Inc., 2011 WL 7070221 at *4 (N.D. Ga. Mar. 1, 2011).

The Davis and Hillery courts are an example of the many Federal courts to apply vicarious liability to TILA. "Although this district has not addressed whether agency principles apply to TILA claims, we will presume that agency principles do apply in light of TILA's broad construction as a remedial statute, *see* Roberts v. Fleet Bank, 342 F.3d 260, 266 (3d Cir.2003), as well as the fact that other districts have found that these principles do apply." Johnson v. Multi-Solutions, Inc., 2011 WL 3667554 at *3. (D.N.J. Aug. 22, 2011) (citing Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739, at *4 (N.D.Cal. Mar.24, 2010); Roach v. Option One Mortg. Corp., 598 F.Supp.2d 741, 753 (E.D.Va.2009); In re Bumpers, 2003 WL 22119929, at *7–9 (N.D.Ill. Sept.11, 2003). *See also* Ording v. BAC Home Loans Servicing, LP, 2011 WL 99016 (D. Mass. 2011) (while servicer must disclose the identity of the holder, it is the holder who has liability under TILA).

Magistrate Judge Papak of the District of Oregon, analyzed Khan, Holcomb, and many of the other cases cited supra. Rinegard-Guirma v. Bank of Am. NA, 2012 WL 1110071 (D. Or. Apr. 2, 2012). Judge Papak concluded that "the Davis court's approach [was] more persuasive. First, Holcomb is suspect because it completely ignores the language and effect of the 2009 TILA amendments, which bear directly on a creditor's liability under Section 1641(f). Moreover, although only a handful of courts have addressed this issue, the trend is towards recognizing creditor liability for servicer's violations of § 1641(f)." Rinegard, 2012 WL 1110071 at *9.

TILA is a very detailed statute and had congress intended to limit vicarious liability, it would have done so just as it did for assignee liability in §1641(a) and servicer liability in §1641(f)(1). Additionally, the 2009 amendments to TILA took place at a time when the country

was in the midst of a massive nation-wide foreclosure crises, and the amendments were designed to afford additional protections to the consumer. "Given that the servicer cannot be held liable for damages for a §1641(f)(2) violation, and the very nature of such a violation implies the debtor will not know the identity of and contact information for the owner of the note, the debtor would be left essentially without a remedy absent some form of vicarious liability. Such a result would seem particularly problematic in the not uncommon situation where a loan has been resold or packaged and securitized, leaving the ultimate owner of obligation several steps removed from the borrower."   Consumer Solutions REO, LLC v. Hillery, 2010 WL 144988 (N.D. Cal. Jan. 8, 2010) *adhered to on reconsideration,* Consumer Solutions Reo, LLC v. Hillery, 2010 WL 334417 (N.D. Cal. Jan. 28, 2010).[6]

Congress was well aware that the vast majority of mortgages were securitized and serviced by servicers. Congress took the extra step of including §§1641(f)(2) and (g)(1) which serve different purposes. Congress also added a private cause of action for a violation of §1641(f)(2), which would be made superfluous if the Court will not apply vicarious liability. Congress' "intentional insertion of the private right of action for violation of § 1641(f)(2) into a remedy section that provides for civil liability against creditors suggests that Congress did exactly" what the Holcomb court suggests it should have done. Davis  2011 WL 7070221 at *5.

 To deny Plaintiff redress under these circumstances would go against the very intent of congress and the very object and policy of TILA. It would reward GreenTree for its unlawful violation of Federal law and as the Holcomb court noted, that would "take on a legislative rather than judicial function".  Holcomb, at *4.

### C.  Vicarious Liability Imputes the Act not the Liability

Defendants then argue that even if this Court were to find that TILA imposes vicarious

---

[6] Although the style is the same, this is an opinion on a separate motion than that cited *supra.*

liability, Fannie Mae is only liable to the extent that Green Tree is liable. Thus, because Green Tree is a servicer and TILA imposes no liability on servicers, Fannie Mae has no liability.

Defendants' argument is flawed as Defendants misunderstand the fundamentals of agency theory. It is not the liability that transfers but the act itself that is imputed to the principle. Mobil Oil Corp v. Bransford, 648 So. 2d 119, 121 (Fla. 1995). Thus, irrespective of whether Green Tree may be held liable for a violation of TILA, it is not the liability that imputes to Fannie Mae, rather the act of Green Tree's failure to comply with TILA, which is imputed to Fannie Mae.

### D.  Green Tree's Letter did not Comply with Section 1641(f)(2)

Plaintiff has withdrawn Count II of her Complaint and any allegations that Defendants failed to comply with §1641(f)(2). Thus, Plaintiff will not address Defendants arguments which are now moot.

### E.  Section 1641(f)(2) is not Unconstitutionally Vague

Plaintiff has withdrawn Count II of her Complaint and any allegations that Defendants failed to comply with §1641(f)(2). Thus, Plaintiff will not address Defendants arguments which are now moot.

### F.  There is an Implied Private Right of Action for Consumer to Pursue and Action for Vicarious Liability Against an Assignee for the Failure of a Servicer to Comply with 15 U.S.C. § 1641(f)(2) of TILA and 12 C.F.R. § 226.36(c)(1)(iii)

Defendant next argues that there is no private cause of action for a violation of 12 C.F.R. § 226.36(c)(1)(iii)[7] [D.E. at 11].  Defendants rely on Alexander v. Sandoval, 532 U.S. 275 (2001) for support but completely miss the mark. The gravamen of Defendants' argument is that

---

7 As authorized by TILA, on October 1, 2009, new 12 C.F.R. § 226.36(c)(1)(iii) went into effect (also known as part of "Regulation Z"). The Federal Reserve Board of Governors was authorized to promulgate Regulation Z under 15 U.S.C. § 1604(a). The information collection requirements were approved by the Office of Management and Budget under 44 U.S.C. § 3501 et seq. and were assigned OMB number 7100–0199. See In re Herrera, 422 B.R. 698, (B.A.P. 9th Cir. 2010) aff'd sub nom. In re Monroy, 650 F.3d 1300 (9th Cir. 2011).

Congress made no indication that it wanted to include a private cause of action to TILA. Tellingly, Defendants do not even assert that GreenTree complied with 12 C.F.R. § 226.36(c)(1)(iii). <u>Sandoval</u> and its test are not relevant here as a private cause of action was specifically contemplated as will be explained.

Noticeably absent from Defendants' Motion to Dismiss is <u>Runkle</u> and <u>Danier v. Fed. Nat. Mortg. Ass'n</u>, 2013 WL 462385 (S.D. Fla. 2013)[8]. In Runkle, Judge Dimitrouleas, found "that a TILA plaintiff can sue for violations of § 226.36(c)".

> [T]his Court finds that a TILA plaintiff can sue for violations of § 226.36(c). TILA Section 1640, entitled Civil Liability, states that "any creditor who fails to comply with any requirement imposed under this part" is liable. 15 U.S.C. § 1640(a) (emphasis added). The heading of that subsection states that its content addresses "individual or class action for damages." Section 1639 is a part of TILA. Section 1639(l)(2) allows the Bureau to prohibit acts and practices that are unfair, and failing to provide a payoff statement is unfair. Because the Bureau has prohibited the refusal to provide a payoff statement, it has imposed a requirement, and therefore a creditor can be liable for failing to comply with that requirement. As a result, the Court finds that a violation of 15 U.S.C. § 1639(l)(2) can be brought as a private cause of action.

<u>Runkle v. Fed. Nat. Mortg. Ass'n</u>, 905 F. Supp. 2d 1326, 1331 (S.D. Fla. 2012)

In <u>Danier</u>, Judge Kenneth A. Marra analyzed <u>Kievman</u>, <u>Montano</u>, and <u>Runkle</u> and concluded: "After reviewing the relevant authorities, the Court chooses to follow the reasoning of *Runkle*. In so doing, the Court concludes that a private cause of action exists for a violation of 15 U.S.C. § 1639(1)(2) and therefore Plaintiffs can sue for violations of 12 C.F.R. 226.36(c)(1)(iii). <u>Danier v. Fed. Nat. Mortg. Ass'n</u>, 2013 WL 462385 at *4 (S.D. Fla. 2013).

12 C.F.R. § 226.36(c)(1)(iii) provides that no servicer shall: Fail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the

---

[8] *But see* <u>Kievman v. Fed. Nat. Mortg. Ass'n</u>, 901 F. Supp. 2d 1348 (S.D. Fla. 2012) In <u>Montano</u>, Judge Ryskamp found a private cause of action existed, albeit limited to a 'high-cost' loan. <u>Montano v. Wells Fargo Bank N.A.</u>, 2012 WL 5233653 (S.D. Fla. 2012)

consumer, an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date. The Board of Governors of the Federal Reserve System ["the Board"] found a 'reasonable time' within which to provide the pay-off statement to be five business days. *See* 73 FR 44522-44573 (July 30, 2008). The Board then found the acts and practices prohibited under §226.36(c) to be unfair pursuant to 15 U.S.C. 1639(l)(2). *See* 73 FR 44522-44570 (July 30, 2008).

Plaintiff urges this Court not to follow <u>Kievman</u>.  There, in summarily analyzing 15 U.S.C. 1639(l)(2), the Honorable Ursula Ungaro held that "there is no private right of action at all for a violation of this regulation". <u>Kievman,</u> at 1353.  Judge Ungaro read 15 U.S.C. 1639(m) as a limitation on 15 U.S.C. 1639(l)(2). Plaintiffs submit that 15 U.S.C. 1639(m) should be read as an addition to the private cause of action available under 15 U.S.C. 1639(l)(2) in allowing the Federal Trade Commission to pursue claims under 15 U.S.C. 1639(l)(2) as well. The plain language of the statute supports such a reading. "*For purposes of enforcement by the Federal Trade Commission*, any violation of a regulation issued by the Bureau pursuant to subsection (l)(2) shall be treated as a violation of a rule promulgated under section 57a of this title regarding unfair or deceptive acts or practices". 15 U.S.C. 1639(m)(emphasis added).

Neither the Defendants nor the <u>Kievman</u> court have explained the opening words of the subsection: "For purposes of enforcement by the Federal Trade Commission…". Those words are clearly not limiting the private cause of action granted under 15 U.S.C. 1640(a). In fact, 15 U.S.C. 1640(a)(4) deals solely with violations of 15 U.S.C. 1639 (in the case of a failure to comply with *any requirement under section 1639 of this title*…). There is no other case law or statutory language to suggest that there is no private cause of action for violations of 15 U.S.C. 1639(l)(2). Conversely, the language and intent behind 12 C.F.R. § 226.36(c)(1)(iii) indicate that congress did indeed intend there to be a private cause of action. *See* 73 FR 44522-44570 (July

30, 2008).

Moreover, Congress' intent is confirmed by its amendment to TILA in the Dodd-Frank Amendments.  Congress amended 15 U.S.C. 1639(g) to read : A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower. (Pub. L. 90–321, title I, § 129G, as added Pub. L. 111–203, title XIV, § 1464(b), July 21, 2010, 124 Stat. 2184.)  The new §1639(g) is due to take effect January 10, 2014, after a one-year extension. (Section effective on the date on which final regulations implementing such section take effect, or on the date that is 18 months after the designated transfer date if such regulations have not been issued by that date, see section 1400(c) of Pub. L. 111–203). The fact that Congress chose to seat this new requirement in §1639 without specifying that it applies to high-cost mortgages- a creditor or servicer of *a home loan*- is further indication that §1639 does not only apply to high-cost mortgages and that it is subject to a private cause of action.

## CONCLUSION

To deny Plaintiffs relief would go against the very object and policy of TILA and reward Defendants for its unlawful violation of Federal law. For the reasons discussed above, Plaintiff, MARIE LUCIEN, respectfully requests this Honorable Court deny Defendants' Motion to Dismiss, order Defendants to file an Answer to Plaintiff's Complaint, and grant such other relief as is just and proper.

Respectfully submitted,

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*

By:    s/Yechezkel Rodal_____
       YECHEZKEL RODAL ESQ.
       FBN 091210

## <u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on January 6, 2014 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

George N. Andrews, Esq.
Shutts & Bowen LLP
200 E. Broward Blvd. Suite 2100
Fort Lauderdale, FL 33301
Counsel for Defendants
Service by CM/ECF

         LOAN LAWYERS, LLC
         *Attorneys for Plaintiff*
         377 North State Road 7, Suite #202
         Plantation, FL 33317
         Telephone: (954) 523-4357
         Facsimile: (954) 581-2786

         /s/Yechezkel Rodal_____
         YECHEZKEL RODAL ESQ.
         FBN 091210
         E-Mail: chezky@floridaloanlawyers.com